ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| MILDRED DROZ ROMERO<br><br>Recurrida<br><br>v.<br><br>GRUPO EPEM, CORP. H/N/C TOYOTA DE BAYAMÓN Y ASEGURADORA ABC<br><br>Peticionario | KLCE202400250 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2023CV01159<br><br>Sobre: Despido Injustificado; Ley Núm. 100, Ley Núm. 69, Salarios, Vacaciones, Horas Extras, Ley Núm. 2 Proc. Sumario |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 12 de abril de 2024.

Grupo EPEM, Inc., h/n/c Toyota de Bayamón, [en adelante, "Grupo EPEM" o Peticionario] solicita la revocación de una *Resolución* emitida el 16 de febrero de 2024 y notificada el 20 de febrero del mismo mes y año por el Tribunal de Primera Instancia, Sala Superior de Bayamón [en adelante, "TPI"]. Mediante esta, el foro de instancia declaró *No Ha Lugar* la moción de sentencia sumaria presentada por el Peticionario, por existir controversias sobre hechos esenciales y materiales.

Por los fundamentos que expondremos a continuación, expedimos el auto de *Certiorari* y confirmamos la Resolución*.*

## I.

El 1 de marzo de 2023 la Sra. Mildred Droz Romero [en adelante, "señora Droz Romero" o Recurrida] presentó una

querella sobre despido injustificado contra Grupo EPEM, al amparo de la Ley Núm. 2 de 17 de octubre de 1961, conocida como Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118, *et seq.* (Ley Núm. 2-1961), que dispone un procedimiento especial de carácter sumario para su tramitación.[1] En esta alegó que comenzó a trabajar para Grupo EPEM en diciembre de 2016, hasta el 17 de enero de 2023 cuando fue despedida. En ese entonces, se desempeñaba como ejecutiva de ventas de autos. Alegó que la Sra. Griselle M. García Morales [en adelante, "señora García Morales"] en representación del patrono ha desprendido un patrón de conducta discriminatorio para con las féminas, siendo la Recurrida la última fémina despedida. Señala que las razones no fueron plasmadas en una carta de despido ni fueron ofrecidas al Departamento de Trabajo. Por ello, sostiene que el despido fue sin justa causa.[2] Reclamó daños emocionales y pecuniarios ascendentes a $40,000.00.[3]

En respuesta, el 14 de marzo de 2023, Grupo EPM contestó la querella.[4] Alegó que la determinación del despido fue resultado del incumplimiento de la Recurrida con sus funciones como vendedora de autos, lo que afectó el buen y normal funcionamiento de la empresa. Indicó que implementaba los cambios operacionales, las bonificaciones y los demás beneficios marginales de manera uniforme a todos los empleados y las empleadas, en consideración a la buena marcha de su negocio. Agregó que el despido fue por justa causa y que no había mediado ánimo discriminatorio alguno.[5]

---

[1] Apéndice de la Petición de Certiorari, págs. 1-6.
[2] *Íd.*, pág. 2.
[3] *Íd.*, pág. 3.
[4] *Íd.*, págs. 7-17.
[5] *Íd.*, pág. 10.

Ese mismo día, Grupo EPEM presentó una *Moción Solicitando Conversión a Procedimiento Ordinario*.[6] Expuso, en síntesis, que, por las alegaciones relacionadas a una cuantiosa reclamación de daños por angustias mentales, no era posible tramitar el caso bajo el procedimiento sumario.[7]

Por otro lado, el 20 de marzo de 2023, la señora Droz Romero presentó una *Moción en Oposición a Moción Solicitando Conversión a Procedimiento Ordinario*.[8] Argumentó que la mera reclamación de angustias mentales por razón de discrimen no conlleva que necesariamente que la querella deba ser tramitada de forma ordinaria.[9]

Así las cosas, el 20 de marzo de 2023, notificada el 21 de marzo de 2023, el foro primario emitió una *Resolución* declarando *No Ha Lugar* la conversión al procedimiento ordinario.[10]

Tras varios trámites procesales, el 30 de octubre de 2023, Grupo EPEM presentó una *Moción Solicitando se Dicte Sentencia Sumaria por la Vía Sumaria*.[11] En su petición manifestó que, el Peticionario terminó el empleo de la señora Droz Romero debido a su patrón de incumplimiento reiterado de la política de cuotas de ventas, lo que afectó el buen y normal funcionamiento de la empresa.[12] Señaló que la Recurrida estuvo sujeta a medidas disciplinarias progresivas y, antes de su despido, se le amonestó por escrito en tres (3) ocasiones distintas por su baja producción, incluyendo una suspensión de empleo.[13] Aseveró que del

---

[6] Apéndice de la Petición de Certiorari, págs. 39-43.
[7] *Íd.*, pág. 42.
[8] *Íd.*, págs. 44-49.
[9] *Íd.*, pág. 48.
[10] *Íd.*, pág. 50.
[11] Apéndice de la Petición de Certiorari, págs. 60-366.
[12] *Íd.*, pág. 61.
[13] *Íd.*, pág. 62.

expediente no surge evidencia alguna ni se esbozan alegaciones de incidentes que permitan concluir que el Grupo EPEM tomó acciones adversas en contra de la señora Droz Romero motivadas por alguna característica protegida.[14]

Grupo EPEM acompañó a la moción varios documentos, entre ellos: las Políticas de Desempeño y Medición para Representantes de Ventas de Autos y sus respectivas enmiendas, varias amonestaciones escritas y verbales sobre los alegados incumplimientos de la Recurrente, y una Declaración Jurada de la señora García Morales. Sostiene que, no existiendo controversia sustancial real en cuanto a los hechos de este caso, procede que se dicte sentencia sumaria a favor del Peticionario.[15]

El 21 de noviembre de 2023, la señora Droz Romero interpuso una *Oposición a la Solicitud de Sentencia Sumaria*.[16] En esta, aceptó ciertos hechos enumerados por Grupo EPEM. Indicó que los representantes de ventas solo pueden cumplir con cuotas cuando hay carros para vender.[17] Arguyó que existen asuntos litigiosos o en controversia, tales como, si la parte querellante fue despedida sin justa causa o discriminadamente por ser mujer. Acompañó a su moción, varios documentos, entre ellos, el Registro de Corporaciones del Departamento de Estado, una Declaración Jurada, y unas hojas de ausencias y vacaciones.[18]

Evaluados los escritos, el 16 de febrero de 2024, notificada el día 20 del mismo mes y año, el tribunal de instancia emitió una *Resolución*.[19] En esta, declaró *No Ha Lugar* la sentencia sumaria

---

[14] *Íd.*, pág. 6.4
[15] *Íd.*, págs. 96-366.
[16] Apéndice de la Petición de Certiorari, págs. 367-402.
[17] *Íd.*, pág. 371.
[18] *Íd.*, págs. 390-402.
[19] *Íd.*, págs. 18-38.

por existir controversias sobre hechos esenciales materiales. En su dictamen, incluyó cuarenta y siete (47) hechos que a su entender no estaban en controversia y otros que sí, a saber:

## HECHOS INCONTROVERTIDOS

1. La parte querellada, Grupo EPEM, Corp., hace negocios como Toyota de Bayamón y es una compañía con fines de lucro dedicada a la venta de autos que opera el concesionario "dealer" de autos Toyota de Bayamón y la cual está registrada en el Departamento de Estado bajo el número 161113 con oficinas localizadas en la Carr. 167 marginal A-17, Urb. Royal Gardens, Bayamón, PR 00956.

2. La Sra. Griselle García Morales llegó a la empresa para el año 2017. Hace unos años recientes ha tomado las riendas de la dirección del dealer. Ésta firmaba las cartas en algunas ocasiones como Presidenta y en otras como Vicepresidenta del Grupo EPEM.

3. La administración de Grupo EPEM realiza planes y proyecciones anuales de ventas de autos para estimar los costos y las ganancias asociados con la operación del negocio. De igual forma, realiza pronósticos de ventas para cada mes de cada año.

4. Grupo EPEM, tomando en consideración sus proyecciones y pronósticos, realiza anticipadamente las órdenes de compra y luego adquiere del distribuidor al por mayor de autos Toyota en Puerto Rico el número de unidades que proyecta vender para un año.

5. El inventario de autos que Grupo EPEM tiene disponible para la venta es financiado. El financiamiento se adquiere a través de una línea de crédito provista por una institución financiera, la cual cobra la tasa de interés prevaleciente en el mercado por el balance pendiente de pago de dicha línea de crédito. Cada vez que Grupo EPEM vende un auto y recibe el pago del precio de venta, salda el balance pendiente de la línea de crédito asociada con el costo de adquirir dicho vehículo.

6. En Grupo EPEM cada Representante de Ventas es responsable de cumplir con todos los procesos y objetivos establecidos en el Departamento de Ventas. El Proceso de Manejo de Desempeño a los Representantes de Ventas le permite a la empresa establecer objetivos, discutir progreso, identificar áreas de oportunidad y acordar planes de mejoramiento y desarrollo.

7. En aras de mantener el buen funcionamiento de la empresa es indispensable que los Representantes de Ventas cumplan consistentemente con las cuotas de

ventas mensuales establecidas de forma que se pueda mantener una operación competitiva que genere ingresos suficientes para cubrir todos los gastos del negocio (incluyendo los costos de financiamiento, del inventario, las contribuciones sobre el inventario y el sueldo de los vendedores y demás empleados), y garantizar una operación rentable en términos de ganancias.

8. La querellante, Mildred Droz Romero, fue contratada para trabajar a jornada completa y por tiempo indeterminado con Grupo EPEM, el 1 de diciembre de 2016 en la posición de Representante de Ventas.

9. Reconociendo la importancia en términos operacionales del Representante de Ventas, en aras de mantenerse competitivos y de cubrir cualquier hora extras en que pueda incurrir el vendedor, Grupo EPEM establece una compensación a base de comisiones por ventas y de un adelanto de sueldo de vez y media la tasa por hora regular del salario mínimo establecido en Puerto Rico.

10. Como Representante de Ventas, la querellante se desempeñaba en calidad de vendedora de autos a razón de $10.88 por hora más las comisiones. Su ingreso anual más alto devengado ascendió a $175,161.14 en el año 2022.

11. En el año 2020, la querellante solicitó un cambio al área de autos usados y, desde entonces, se desempeñaba en calidad de vendedora de autos usados con un salario de $10.88 por hora más las comisiones.

   La solicitud de cambio se debió a la preocupación de la querellante por su producción.

12. La querellante recibió amonestaciones durante su empleo con Grupo EPEM relacionadas con su producción y con sus tardanzas.

13. A la querellante le entregaron las distintas políticas de la empresa, entre éstas: Política de Licencia por Vacaciones, Política de Uso y Manejo de CDK CRM, Política de Desempeño y Medición para Representantes de Ventas de Autos, Descripción de Puesto, Ciclo en el Proceso de Venta y Política de Hostigamiento Sexual.

14. El 7 de julio de 2020, la querellante firmó el Desempeño y Medición Para Representantes de Ventas de Autos de la querellada. La misma establece lo siguiente:

   Durante el año que comprende la mediación mensual, si el/la Representante de Ventas no cumple con la meta de ventas mensual se tomarán las siguientes medidas Disciplinarias Progresivas:

   Ciclo de evaluación mensual durante el año fiscal:

- Amonestación Verbal Documentada- 1'er (primer) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunión con Representante de Ventas se documentará el incumplimiento de cuota mensual y se le exhortará a cumplir con la misma.

- Amonestación Escrita (Primera Advertencia Escrita)- 2'do (segundo) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunión con Representante de Ventas se documentará la repetida incidencia del incumplimiento de cuota mensual y se le exhortará nuevamente a cumplir con la misma.

- Suspensión (Segunda Advertencia Escrita)- 3'er (tercer) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas. En reunión con Representante de Ventas se documentará la repetida incidencia del Incumplimiento de cuota mensual y se le notificará por escrito que de repetir el Incumplimiento de cuota mensual se realizará una Terminación de Empleo (Despido).

- Terminación de Empleo- 4'to (cuarto) mes (durante cualquier periodo dentro del año fiscal) sin cumplir con la cuota mínima requerida de ventas.

15. El 7 de diciembre de 2018, la Gerente de Recursos Humanos, la Sra. Sandra I. Merced Oquendo y la Directora de Financiamiento y Procesos de Ventas, la Sra. Yazmín Suleiman Vera, le cursaron a la querellante un memo titulado "Comportamiento inadecuado en área de trabajo", en el que le informaron a la Sra. Droz Romero que había intercambiado palabras en un alto tono y mostrando molestia con el Sr. José Morales, por lo que el Gerente de Ventas, Sr. Peter Ramos, tuvo que subir la música del 'showroom' para que el cliente no escuchara la conversación. Se le indicó, además, que bajo ninguna circunstancia se podría repetir la referida situación y se le apercibió de que, si incurría nuevamente en un comportamiento que afectara el buen y sano ambiente de trabajo, la empresa tomaría medidas disciplinarias más severas y sería suspendida de empleo y sueldo por tres (3) días laborables.

16. El 6 de agosto de 2020, la Gerente de Recursos Humanos, la Sra. Sandra I. Merced Oquendo y el Gerente de Ventas, el Sr. Jonathan Meléndez, le cursaron a la querellante un memo titulado "Incumplimiento de cuota mensual- Amonestación Verbal- documentada", en el que le indicaron a la Sra. Droz Romero que había incumplido con la cuota mínima de ventas mensual para el mes de julio de 2020 ya que solo había vendido dos (2) autos, en vez de los diez (10) requeridos. En dicho memo, se le recordaron a la querellante las distintas gestiones

que podía realizar para mejorar sus ventas y, además, se le apercibió que, de incumplir nuevamente con la cuota mínima establecida, estarían tomando medidas disciplinarias más severas, las cuales se encuentran en la Política de Desempeño, Medición y Plan de Incentivos para Representantes de Ventas de Autos.

17. El 11 de diciembre de 2020, la Gerente de Recursos Humanos, la Sra. Sandra I. Merced Oquendo y el Gerente de Ventas, el Sr. Jesús A. Vélez Cruz, le cursaron a la querellante un memo titulado "Incumplimiento de cuota mensual- Amonestación Escrita" en el que le informaron a la Sra. Droz Romero que había incumplido con la cuota requerida de venta de unidades (vehículos) para el mes de noviembre de 2020, ya que había vendido dos (2) vehículos, en vez de los diez (10) requeridos. En el referido memo, se le apercibió a la Sra. Droz Romero que, de incumplir nuevamente con la cuota de ventas mensual, se le suspendería de empleo y sueldo por tres (3) días laborables.

18. El 22 de marzo de 2021, la Gerente de Recursos Humanos, la Sra. Sandra I. Merced Oquendo, le cursó a la querellante un memo titulado "Retroalimentación y recordatorio- Política de Registro de Asistencia Diaria" en el que le se le informó que no registró su asistencia (ponche) un (1) día, incumpliendo así con la Política de Registro de Asistencia Diaria. Se le apercibió que, de volver a incumplir con la Política antes referida, tomarían medidas disciplinarias al respecto y se le volvió a entregar la Política para que la repasara.

19. El 14 de octubre de 2021, la Vicepresidenta de Grupo EPEM, la Sra. Griselle M. García Morales y el Gerente de Ventas, el Sr. Jesús A. Vélez Cruz, le cursaron a la querellante un memo titulado "Incumplimiento de cuota mensual- Amonestación Verbal- documentada" en el que le informaron a la Sra. Droz Romero que no cumplió con la cuota mínima mensual de ventas ajustada de cuatro (4) vehículos para el mes de septiembre de 2021, ya que no vendió ninguna unidad. En éste, se le apercibió que, si continuaba incumpliendo con la cuota de ventas mensual, estarían tomando medidas disciplinarias más severas, las cuales están establecidas en la Política de Desempeño y Medición para Representantes de Ventas.

20. El 10 de diciembre de 2021, la Vicepresidenta de Grupo EPEM, la Sra. Griselle M. García Morales y el Gerente de Ventas, el Sr. Jesús A. Vélez Cruz, le cursaron un memo a la Sra. Droz Romero titulado "Incumplimiento de cuota mensual- Suspensión", en el que le expresaron a la querellante que había incumplido con la cuota mínima mensual de ventas ajustada de cuatro (4) vehículos para el mes de noviembre de 2021, ya que solo vendió dos (2) unidades. En éste, se le apercibió que, si continuaba incumpliendo con la cuota de ventas mensual,

estarían tomando medidas disciplinarias más severas.

Además, Grupo EPEM suspendió a la querellante de empleo y sueldo por cinco (5) días laborables.

21. El 13 de enero de 2022, la Vice Presidenta de Grupo EPEM, la Sra. Griselle M. García Morales, le cursó a la Sra. Droz Romero un memo titulado "Incumplimiento en Política de Ética & Comportamiento- Insubordinación" en el que le informó que el pasado lunes, 13 de diciembre de 2021, mientras se encontraban reunidas dialogando sobre una suspensión de empleo, la querellante, de manera retante, tomó una foto de un documento oficial de la Empresa que versaba sobre su suspensión, luego de que la Sra. García Morales le indicara que no podía entregarle copia del documento por ser éste confidencial. Se le informó, además, que en pasadas ocasiones había sido desobediente e insubordinada con compañeros y Gerenciales de la Empresa, por lo que le exhortó a que no incurriera nuevamente en dichos comportamientos y actos irrespetuosos. Finalmente, la Sra. García Morales le apercibió a la querellante que, si continuaba comportándose de manera que atentara contra la Política de Ética y Comportamiento de la compañía, estaría tomando medidas disciplinarias más severas que podrían culminar en la terminación de su empleo.

22. El 21 de febrero de 2022, la Vicepresidenta de Grupo EPEM, la Sra. Griselle M. García Morales y el Gerente de Ventas, el Sr. Jesús A. Vélez Cruz, le cursaron a la querellante un memo titulado "Incumplimiento de cuota mensual- Amonestación Escrita", en el que se le informó que había incumplido, nuevamente, con la cuota mínima mensual de ventas para el mes de enero de 2022 ya que había vendido siete (7) vehículos, en vez de los diez (10) requeridos. En el referido memo, se le apercibió a la Sra. Droz Romero que, si continuaba incumpliendo con la cuota de ventas mensual, sería suspendida de empleo y sueldo por cinco (5) días laborables, como consta en la Política de Desempeño y Medición para Representantes de Ventas y en la Enmienda- Política de Desempeño & Medición- Representantes de Ventas Autos.

23. El 21 de febrero de 2022, la Vice Presidenta de Grupo EPEM, la Sra. Griselle M. García Morales y el Gerente de Ventas, el Sr. Jesús A. Vélez Cruz, le cursaron a la querellante un memo titulado "Incumplimiento de cuota mensual- Amonestación Verbal", en el que le indicaron a la Sra. Droz Romero que había incumplido con la cuota de ventas mensual para el mes de diciembre de 2021 ya que había vendido seis (6) vehículos, en vez de las diez (10) unidades requeridas. En dicho memo, se le apercibió a la Sra. Droz Romero que, si volvía a incumplir con la cuota de ventas mensual, Grupo EPEM tomaría medidas disciplinarias más severas, las cuales se encuentran establecidas y detalladas

en la Política de Desempeño & Medición-Representantes de Ventas Autos y en la Enmienda-Política de Desempeño & Medición- Representantes de Ventas Autos.

24. El 5 de marzo de 2022, la Vice Presidenta de Grupo EPEM, la Sra. Griselle M. García Morales y el Gerente de Ventas, el Sr. Jesús A. Vélez Cruz, le cursaron a la querellante un memo titulado "Incumplimiento de cuota de Ventas- Suspensión de Empleo y sueldo", en el que le notificaron a la Sra. Droz Romero que había incumplido con la cuota de ventas mensual para el mes de febrero de 2022, ya que vendió ocho (8) vehículos, en vez de las diez (10) unidades requeridas. En dicho memo, se le apercibió a la Sra. Droz Romero que, si incumplía nuevamente con la cuota de ventas mensual y si volvía a ser inconsistente con su desempeño, la compañía se vería obligada a terminar su empleo. Además, Grupo EPEM suspendió a la querellante de empleo y sueldo por cinco (5) días laborables.

25. El 10 de diciembre de 2022, la Vice Presidenta de Grupo EPEM, la Sra. Griselle M. García Morales y el Gerente de Ventas, el Sr. Jesús A. Vélez Cruz, le cursaron a la querellante un memo titulado "Suspensión de Empleo y sueldo- Incumplimiento de cuota de Ventas", en el que le informaron a la Sra. Droz Romero que había incumplido con la cuota de ventas mensual ajustada de seis (6) vehículos usados o nuevos en el mes de noviembre de 2022, ya que había vendido dos (2) vehículos usados y tres (3) nuevos, para un total de cinco (5) unidades. En el referido memo, se le apercibió a la Sra. Droz Romero que, si volvía a incumplir con la cuota mensual establecida de ventas, se verían obligados a terminar su empleo. Además, Grupo EPEM suspendió a la querellante de empleo y sueldo por cinco (5) días laborables.

26. El 10 de diciembre de 2022, la Sra. Mildred Droz Romero fue suspendida de empleo y sueldo por cinco (5) días laborables según se le había advertido en la amonestación anterior con fecha de 5 de marzo de 2022.

27. Durante el mes de diciembre de 2022, la querellante vendió siete carros.

28. El 17 de enero de 2023, seis (6) años después de haber sido contratada, la parte querellada, por medio de la Sra. Griselle M. García Morales, despidió a la querellante.

29. El 5 de diciembre de 2022, la empresa tomó la decisión de despedir a la Sra. Milly Agnes Morales Kuilan y al Sr. José Morales, luego de evaluar el historial de incumplimiento de estos empleados con las cuotas de ventas.

30. La Descripción del Puesto de Representante de Ventas establece directamente que las responsabilidades de este puesto son encargarse de

vender vehículos nuevos bajo los márgenes de ganancia y volúmenes establecidos por el Presidente de la Empresa y cumplir con la cuota mensual de diez (10) vehículos entre nuevos y/o usados. Además, que la vendedora de autos deberá tener la capacidad para cumplir con la cuota mínima requerida y que de incumplir con esta tarea esencial la administración de los concesionarios de Grupo EPEM podrá tomar medidas disciplinarias.

31. El cumplimiento de las cuotas de ventas mensual en Grupo EPEM es parte esencial para el buen y normal funcionamiento de la empresa y está basado en lograr una operación normal y viable que conduzca a mantener operando la empresa de manera competitiva.

32. Entre las gestiones que realizó Grupo EPEM para ayudar a la parte querellante a cumplir con sus ventas se encuentran: proveer el sistema CDK CRM para mantener un registro de todos los clientes y ofrecerles ofertas y promociones especiales, referidos, entre otros; proveer adiestramientos para mostrarle a los vendedores y las vendedoras los modelos y aplicaciones nuevas; ajustar la cuota de ventas mensual en varias ocasiones y en una ocasión la condonó; moverla al área de autos usados llamado Premium Collection luego de que la querellante manifestara estar preocupada con su producción y solicitara el cambio; etc.

33. A la querellante se le entregó un documento con la descripción de cómo monitorear las llamadas de los clientes a través de un servicio de números 800's de Call Source, en el que le indicaron el procedimiento a seguirse al atender al cliente a través de la llamada.

34. A la querellante le permitían promocionarse y promover la venta de los carros en sus redes sociales y en páginas de ventas como Clasificados Online.

35. A la querellante le asignaban clientes y prospectos a través del sistema ELEAD CRM. La asignación de los prospectos por parte del BDC era por equipo y dentro del equipo por orden alfabético según la primera letra de su primer apellido.

36. La querellada creó el Top Seller Reward, mediante el cual a los Representantes de Ventas les daban acceso a los clientes de Toyota de Bayamón y de Premium Collection que podían cambiar su unidad (vehículo). Para tener acceso a los referidos clientes, los representantes de ventas debían cumplir con unos requisitos de ventas, cumplir con el registro de asistencia y asistir al trabajo.

37. El 1 de agosto de 2022, la querellada enmendó su política de desempeño y medición para los representantes de ventas de autos y estableció que la cuota de venta mensual para los representantes

del área de Premium Collection era de seis (6) autos usados.

38. El 6 de septiembre de 2022, la querellada nuevamente enmendó la cuota de ventas mensual para el mes de agosto a cinco (5) autos para los vendedores de autos usados.

39. El 6 de octubre de 2022, la querellada informó que las ventas del mes de septiembre no serían incluidas en la medición del desempeño anual.

40. El 5 de diciembre de 2022, la querellada enmendó la cuota de ventas mensual para el mes de agosto a cuatro (4) autos para los vendedores de autos usados.

41. Además de las comunicaciones mensuales con los representantes de ventas en relación a los esfuerzos que deben hacer y a los ajustes en venta, el patrono querellado, por vía del supervisor, también reunía a los vendedores y las vendedoras semanalmente, incluyendo a la querellante, para discutir lo que estaba pasando en el piso, cómo mejorar y estrategias.

42. Para el mes de marzo de 2020, la Sra. Grisellle García, Vicepresidenta de Grupo EPEM, se reunió con cada Representante de Ventas del Concesionario de Toyota de Bayamón y el Concesionario de Premium Collection, incluyendo a la querellante, y entre los temas discutidos estuvo la norma de que el mínimo aceptado de cuota de ventas mensual era de diez (10) vehículos por cada mes del año. En dicha reunión, la Sra. García reiteró que el incumplimiento con este proceso conllevaría la imposición de medidas disciplinarias.

43. El salario de la Sra. Mildred Droz Romero para el año 2020 fue de $42,763.41, para el año 2021 su salario fue de $98,313.04 y para el año 2022 su salario fue de $175,161.14.

44. La querellante entiende que se le adeuda por concepto de comisiones entre $14,000.00 a $15,000.00 y acepta que a esa cantidad se le tendría que restar el salario que Grupo EPEM le pagó.

45. Las comisiones e incentivos sobre las ventas de vehículos se devengan cuando la transacción de la venta haya sido completada. A esos efectos, y entre otras cosas, la comisión se paga cuando el caso esté cobrado por Toyota de Bayamón y serán liquidadas en el próximo pago de comisiones una vez se haya cobrado la venta del caso.

46. Grupo EPEM no liquida las cantidades por concepto de comisiones, salario y vacaciones al momento de la terminación, ya que se tiene que realizar el correspondiente cuadre.

47. En el año 2022 se realizó un débito por un error en el pago de un bono a la querellante. La Sra. Griselle M. García Morales explicó que a cada vendedor se le da un bono si llega a la meta de diez (10) autos pero que el gerente de contabilidad cometió unos errores pagando dichos bonos a personas que no cumplieron con el requisito impuesto por Grupo EPEM (vender diez (10) autos), por lo que la compañía procedió a debitar dicho pago indebido, luego de informarle y explicarle lo sucedido a los vendedores y las vendedoras afectadas.

## HECHOS EN CONTROVERSIA

1. Si el despido de la querellante fue justificado.

2. Si la querellada le adeuda alguna suma de dinero a la querellante por concepto de liquidación de comisiones y vacaciones.

3. La cantidad adeudada, si alguna, por la querellada a la querellante.

4. Si la querellante se negó a recibir el cheque por concepto de comisiones y vacaciones que le remitió la querellada.

5. Si el Sr. Jonathan Meléndez, que fungió como supervisor de la querellante hasta el mes de diciembre de 2020, exhibió conducta discriminatoria por razón de género en contra de la querellante.

6. Si desde que Grupo EPEM accedió a la solicitud de cambio de la querellante al área de carros usados en el mes de diciembre 2020, el Sr. Jonathan Meléndez dejó de supervisarla y su supervisor pasó a ser el Sr. Jesús Vélez.

7. Si el ciclo de evaluación que se tomó en consideración para despedir a la querellante fue del 1 de julio de 2021 a 30 de julio de 2022 o del 1 de enero de 2022 a 31 de diciembre de 2022.

8. Si durante el ciclo de evaluación que fue tomado en consideración para el despido de la querellante, la política de Grupo EPEM establecía que las ventas de carros nuevos realizadas por los vendedores de carros usados serían consideradas para el conteo de la cuota mensual.

9. Si los ajustes a las cuotas mensuales realizados de forma retroactiva por la Sra. García Morales fueron realizados para perjudicar a la querellante.

10. Si Grupo EPEM tenía una política establecida para prorratear el tiempo tomado por sus empleados para el disfrute de licencias de enfermedad y vacaciones a la contabilización de las cuotas de ventas.

11. Si durante el periodo de enero de 2022 a diciembre de 2022, la querellante incumplió con la Política de

Desempeño y Mediación para Representantes de Ventas de Autos.

12. Si la querellante fue enviada a varios sitios a tomar adiestramientos y certificarse con Toyota Puerto Rico.

13. Si Grupo EPEM mantiene una política contra el discrimen, tiene colocados afiches en el área de trabajo y en las políticas de la compañía se incluye el procedimiento disponible para presentar quejas por cualquier incumplimiento de estas políticas.

Luego de analizar el expediente, el foro primario resolvió que existe la necesidad de que se diriman cuestiones de credibilidad en un juicio, por lo que no procede dictar sentencia sumaria. Concluyó que en este pleito existe una controversia real sobre hechos esenciales y materiales en cuanto a la razón del despido.

Consecuentemente, el foro primario, ordenó la continuación de los procedimientos.

En desacuerdo con la determinación del tribunal de instancia, el 29 de febrero de 2024, Grupo EPEM presentó el recurso que atendemos. Alegó que incidió el TPI:

COMO CUESTIÓN DE HECHO Y DE DERECHO AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA PRESENTADA POR GRUPO EPEM.

AL NO DETERMINAR QUE EL DESPIDO DE LA QUERELLANTE FUE CON JUSTA CAUSA YA QUE EL MISMO OBEDECIÓ A QUE INCUMPLIÓ CON LAS FUNCIONES ESENCIALES DE SU PUESTO DE VENDEDORA AL REITERADAMENTE INCUMPLIR CON LAS CUOTAS DE VENTAS MENSUALES RAZÓN POR LA CUAL PREVIO A SU DESPIDO FUE DISCIPLINADA DE MANERA PROGRESIVA CONFORME ESTABLECE LA POLÍTICA DEL PATRONO Y LAS DETERMINACIONES DE HECHOS DEL TRIBUNAL DE PRIMERA INSTANCIA.

AL DETERMINAR QUE EXISTE CONTROVERSIA EN CUANTO AL PERIODO DE EVALUACIÓN TOMADO EN CONSIDERACIÓN PARA EL DESPIDO DE LA QUERELLANTE.

AL DETERMINAR QUE EXISTE CONTROVERSIA EN CUANTO A SI LOS AJUSTES PARA DISMINUIR LAS CUOTAS MENSUALES REALIZADOS DE FORMA RETROACTIVA PARA TODOS Y TODAS LOS VENDEDORES POR LA SRA. GARCÍA MORALES FUERON REALIZADOS PARA PERJUDICAR A LA QUERELLANTE.

AL NO DESESTIMAR LA CAUSA DE ACCIÓN DE HORAS EXTRAS Y DE DEDUCCIONES REALIZADAS ILEGALMENTE NI HACER DETERMINACIONES SOBRE LOS PARTICULARES.

El 25 de marzo de 2020, la señora Droz Romero presentó su alegato. Con el beneficio de ambas comparecencias, adjudicamos el recurso.

**II.**

**A.**

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. IG Builders et al. v. BBVAPR, 185 DPR 307 (2012); Pueblo v. Díaz de León, 176 DPR 913, 917 (2009); García v. Padró, 165 DPR 324, 334 (2005). La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. IG Builders et al. v. BBVAPR, *supra*.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, nos faculta a revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurre de la denegatoria de una moción de carácter dispositivo.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso *Certiorari*, nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*. La referida regla dispone lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. García v. Asociación, 165 DPR 311 (2005); Meléndez Vega v. Caribbean Intl. News, 151 DPR 649, 664 (2000); Lluch v. España Service Sta., 117 DPR 729 (1986); Valencia Ex Parte, 116 DPR 909 (1986). El adecuado ejercicio de la discreción está "inexorable e indefectiblemente atado al concepto de la razonabilidad". García v. Asociación, *supra*.

**B.**

La sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica para aquellos litigios de naturaleza civil en los que no existe una controversia genuina en torno a los hechos materiales que componen la causa de acción que se contempla. Roldán Flores v. M. Cuebas, Inc., 199 DPR 664 (2018); Rodríguez Méndez v. Laser Eye, 195 DPR 769, 785 (2016). La Regla 36.1 de Procedimiento Civil, establece que "una parte que solicite un remedio podrá, presentar una moción fundada en declaraciones

juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada." 32 LPRA Ap. V, R. 36.1. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Meléndez González et al. v M. Cuebas, 193 DPR 100 (2015); Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010).

Por otro lado, la parte que se opone tiene que contestar de forma específica y detallada para colocar al juzgador en posición de concluir que persisten dudas acerca de los hechos esenciales de la causa de acción. Regla 36.3 de Procedimiento Civil; Velázquez Ortíz v. Mun. de Humacao, 197 DPR 656, 663 (2017); Ramos Pérez v. Univisión, *supra*, págs. 213, 215. Sin embargo, la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática. Mun. de Añasco v. ASES et al., 188 DPR 307, 327 (2013); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 556 (2011); González Aristud v. Hosp. Pavía, 168 DPR 127, 138 (2006). En tal caso, la sentencia sumaria procederá, si el tribunal queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria. Mun. de Añasco v. ASES et al., *supra*; Córdova Dexter v. Sucn. Ferraiuoli, *supra*, pág. 555. De ser así, el Tribunal únicamente dictará Sentencia Sumaria a favor de una parte si el derecho aplicable así lo justifica. Oriental Bank

v. Perapi et al., 192 DPR 7, 25 (2014); Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3.

En cuanto a ciertos casos de naturaleza laboral, como, por ejemplo, de discrimen por razón de edad u hostigamiento sexual, el Tribunal Supremo ha expresado que, lo más recomendable, es denegar la solicitud de sentencia sumaria y celebrar la vista en los méritos. Véase, Piñero González v. A.A.A., 146 DPR 890, 905 (1998); Soto v. Hotel Caribe Hilton, 137 DPR 294, 312 (1994); Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117 (1990).

Asimismo, un tribunal, en el sano ejercicio de su discreción, debe abstenerse de resolver mediante el mecanismo de sentencia sumaria controversias en las que subyacen elementos subjetivos de intención, propósitos mentales o negligencia, y cuando el factor credibilidad sea esencial y esté en disputa. Rivera Rodríguez v. Rivera Reyes, 168 DPR 193, 211-212 (2006); Véase, además, Velázquez Ortíz v. Mun. de Humacao, *supra,* pág. 663. El principio rector que debe guiar al juzgador en la determinación sobre si procede o no la sentencia sumaria es el sabio discernimiento, ya que mal utilizada, puede prestarse para privar a un litigante de su "día en corte", principio fundamental del debido proceso de ley. Mun. de Añasco v. ASES et al., *supra*, págs. 327-328.

**C.**

La Ley Núm. 2-1961, *supra*, "provee un mecanismo sumario para la tramitación y adjudicación de pleitos laborales". Patiño Chirino v. Parador Villa Antonio, 196 DPR 439, 446 (2016). La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de proteger al obrero y desalentar el despido injustificado. Patiño

Chirino v. Parador Villa Antonio, *supra*; Izagas Santos v. Family Drug Center, 182 DPR 463, 480 (2011). Con ese propósito, se alteraron ciertos términos y condiciones provistas en nuestro ordenamiento procesal, las cuales rigen de ordinario la litigación civil. León Torres v. Rivera Lebrón, 204 DPR 20 (2020). En función del interés protegido por esta legislación social, consistentemente se ha destacado la importancia de asegurar que los trámites judiciales encaminados bajo el palio de la Ley Núm. 2, no pierdan su esencia expedita. León Torres v. Rivera Lebrón, *supra*; Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254 (2018). Es por eso por lo que, al examinar, vía *certiorari*, resoluciones interlocutorias emitidas en pleitos incoados de acuerdo con el procedimiento sumario dispuesto en la Ley Núm. 2, *supra*, el Tribunal Supremo ha concluido que la revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento laboral. Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 733 (2016); citando a Dávila, Rivera v. Antilles Shipping, Inc., 147 DPR 483, 496 (1999).

Se exceptúa de esta norma, aquellas resoluciones dictadas por un tribunal sin jurisdicción, aquellos casos extremos en los cuales los fines de la justicia así lo requieran o cuando hacerlo dispondría del caso en forma definitiva. Medina Nazario v. McNEIL Healthcare LLC, 194 DPR 723, 733 (2016); Dávila, Rivera v. Antilles Shipping, Inc., *supra*, pág. 498.

**III.**

El Peticionario Grupo EPEM alega que, conforme los hechos adjudicados por el TPI, el despido de la Recurrida procedía conforme a derecho.

Droz Romero, por su parte, expresa que el foro primario no quedó convencido de tener todos los hechos esenciales que justificaran dictar sentencia sumaria, por existir cuestiones de credibilidad por dirimir. Señala que, esta determinación se ajusta a la norma jurídica aplicable y es correcta en derecho. Veamos.

En la *Resolución* que revisamos, el foro primario plasmó cuarenta y siente (47) determinaciones de hechos que estaban incontrovertidos. A su vez, determinó que existían controversias en cuanto a: 1) las cuantías adeudadas por el Peticionario, si alguna, 2) si la Recurrida se negó a recibir algún pago realizado por el Peticionario, 3) si Grupo EPEM tenía una política establecida en contra del discrimen y 4) si la querellante fue orientada en cuanto a esta.

Notamos que el TPI recopiló, en las determinaciones de hechos, alegaciones que realizó Grupo EPEM. Sin embargo, no hay una determinación en cuanto a la razón del despido y si este fue justificado. Este hecho esencial está en controversia. No existe en los autos, prueba documental que clarifique ese hecho esencial. Para dilucidar estas controversias, el TPI ordenó la continuación de los procedimientos.

Como indicamos, la sentencia sumaria es un remedio discrecional que el tribunal puede conceder únicamente cuando no tiene dudas sobre los hechos esenciales. Si existe duda sobre los hechos, esta debe dirimirse en una vista en su fondo, tal como el TPI lo decretó. Asimismo, la determinación del foro primario es cónsona a la línea jurisprudencial que promulga que, en ciertos casos de naturaleza laboral, como el que atendemos sobre discrimen, lo más conveniente es denegar la solicitud de sentencia sumaria y celebrar la vista en los méritos. Véase, Piñero González

v. A.A.A., *supra*. Tampoco podemos eludir que el ordenamiento jurídico limita nuestra discreción para atender resoluciones interlocutorias emitidas al amparo de un procedimiento de naturaleza expedita, como lo es la Ley Núm. 2. Díaz Santiago v. PUCPR, 207 DPR 339 (2021).

Por todo lo cual, tras evaluar las mociones de las partes, los documentos complementarios a estas y demás documentos que conforman el legajo apelativo, junto al marco jurídico que rige la causa, expedimos el auto solicitado, pero declinamos intervenir con el dictamen interlocutorio recurrido. En ausencia de una demostración clara de que el tribunal actuara de forma arbitraria, caprichosa o abusara de su discreción, en adición a la corrección del análisis en la Resolución que aquí atendemos, confirmamos la misma.

## IV.

En virtud de lo aquí expresado, expedimos el auto de *Certiorari* solicitado y confirmamos la Resolución contra la que se recurre.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones